| | |
|---|---|
| 1 | Matthew S. Steinberg (SBN 82969) |
|   | msteinberg@cozen.com |
| 2 | Amy B. Alderfer (SBN 205482) |
|   | aalderfer@cozen.com |
| 3 | Sara B. Poster (SBN 244838) |
|   | sposter@cozen.com |
| 4 | COZEN O'CONNOR |
|   | 601 South Figueroa Street |
| 5 | Suite 3700 |
|   | Los Angeles, CA  90017 |
| 6 | Telephone: 213.892.7900 |
|   | Facsimile: 213.892.7999 |
| 7 | |
|   | Attorneys for Defendant Beachbody, LLC |
| 8 | |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| PAMELA CRAWFORD, on behalf of herself and all others similarly situated, | ) ) ) | Case No.: 14CV1583 GPC KSC |
| Plaintiff, | ) ) ) | [Assigned for all purposes to Honorable Gonzalo P. Curiel, Courtroom 2D, (2nd Floor- Schwartz)] |
| vs. | ) ) | **DEFENDANT BEACHBODY, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO TRANSFER THIS ACTION TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA** |
| BEACHBODY, LLC, | ) ) ) | |
| Defendant. | ) ) ) ) ) | |
| | ) ) | [28 U.S.C. §1404(a)] |
| | ) ) ) | [Filed Concurrently With Notice of Motion and Motion, Declaration of Jonathan Gelfand] |
| | ) ) ) | Date:  November 7, 2014 |
| | ) ) | Time:  1:30 p.m. |
| | ) ) | Courtroom:  2D |

14CV1583

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO TRANSFER

**Table of Contents**

**Page**

I. INTRODUCTION ..................................................................................................1
II. FACTS ...................................................................................................................1
III. Legal Argument ....................................................................................................3
   1.   The Case Should Be Transferred to the Central District of California Under 28 U.S.C. §1404(a). ................................................................3
   2.   The Forum Selection Clause Is Valid and Enforceable. ................................6
      (a) The Forum Selection Clause Is Part of a Valid Clickwrap Agreement. ....6
      (b) The Forum Selection Clause Is Reasonable and Should Be Enforced. .....8
         (i) The Forum Selection Clause Clearly Applies to Plaintiff's Claims. ..9
         (ii) The Forum Selection Clause Is Not the Result of Fraud or Overreaching. ...............................................................................10
         (iii) The Forum Selection Clause Does Not Deny Plaintiff an Effective Forum. ..........................................................................................12
         (iv) Plaintiff Will Not Be Legally Disadvantaged by a Transfer. ............13
         (v) Enforcing the Forum Selection Clause Does Not Violate Public Policy. ...........................................................................................13
IV. CONCLUSION ...................................................................................................14

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO TRANSFER

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Allen v. Lloyd's of London*,
 94 F.3d 923 (4th Cir. 1996) .................................................................................................. 9

*Argueta v. Banco Mexicano, S.A.*,
 87 F.3d 320 (9th Cir.1996) ................................................................................................... 9

*Atlantic Marine Constr. Co. v. United States District Court for the Western District of Texas*,
 -- U.S. --, 134 S. Ct. 568 (Dec. 3, 2013) ...................................................................... 3, 4, 5, 6

*Bennett v. Hosting.com, Inc.*,
 2008 WL 4951020 (N.D. Cal. Nov. 18, 2008) ................................................................ 11, 13

*The Bremen v. Zapata Off-Shore Co.*,
 407 U.S. 1 (1972) ........................................................................................................ 8, 9, 12

*Carnival Cruise Lines, Inc. v. Shute*,
 499 U.S. 585 (1991) ........................................................................................................ 9, 11

*Celebrity Chefs Tour, LLC v. Macy's, Inc.*,
 2014 WL 1660427 (S.D. Cal. Aug. 25, 2014) .................................................................... 10

*Daimler AG v. Bauman*,
 -- U.S. --, 134 S. Ct. 746 (2014) ........................................................................................... 5

*Doe v. Project Fair Bid Inc.*,
 2011 WL 3516073 (W.D. Wash. 2011) ............................................................................... 7

*E. & J. Gallo Winery v. Andina Licores S.A.*,
 440 F.Supp.2d 1115 (E.D. Cal. 2006) ................................................................................ 13

*Foster v. Nationwide Mut. Ins. Co.*,
 No. 07-4928, 2007 WL 4410408 (N.D. Cal. Dec. 14, 2007) ............................................. 13

*Fteja v. Facebook, Inc.*,
 841 F.Supp.2d 829 (S.D.N.Y.2012) ..................................................................................... 7

*Guadagno v. E*Trade Bank*,
 592 F.Supp.2d 1263 (C.D. Cal. 2008) .................................................................................. 7

*Hawkins v. Gerber Products Co.*,
    924 F.Supp.2d 1208 (S.D. Cal. 2013) ....................................................................... 5

*Hoffman v. Blaski*,
    363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960) .............................................. 4

*Inter-Mark USA, Inc. v. Intuit, Inc.*,
    2008 WL 552482 (N.D. Cal. Feb. 27, 2008) ............................................................ 7

*Malloy v. McDonald's Corp.*,
    2009 WL 1288696 (E.D. Cal. May 6, 2009) ............................................................ 4

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
    858 F.2d 509 (9th Cir. 1988) .............................................................................. 8, 12

*Meras Engineering, Inc. v. CH2O, Inc.*,
    2013 WL 146341 (N.D. Cal. Jan. 14, 2013) ........................................................... 13

*Molnar v. 1–800–Flowers.com, Inc.*,
    Case No.: 08–cv–0542–CAS–JCX, 2008 WL 4772125 (C.D. Cal.
    Sept. 29, 2008) .......................................................................................................... 8

*Murphy v. Schneider Nat'l, Inc.*,
    362 F.3d 1133 (9th Cir. 2004) ............................................................... 9, 11, 12, 14

*PDC Laboratories, Inc. v. Hach Co.*,
    2009 WL 2605270 (C.D. Ill. Aug. 25, 2009) ........................................................... 8

*Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*,
    741 F.2d 273 (9th Cir. 1984) .................................................................................. 14

*Register.com, Inc. v. Verio, Inc.*,
    356 F.3d 393 (2d Cir. 2004) ..................................................................................... 8

*Spradlin v. Lear Siegler Mgmt. Servs. Co.*,
    926 F.2d 865 (9th Cir. 1991) ............................................................................. 8, 12

*Swift v. Zynga Game Network, Inc.*,
    805 F.Supp.2d 904 (N.D. Cal. 2011) ........................................................................ 7

*Ticketmaster L.L.C. v. RMG Technologies, Inc.*,
    507 F.Supp.2d 1096 (C.D. Cal. 2007) ...................................................................... 7

*United States v. Drew*,
    259 F.R.D. 449 (C.D. Cal. 2009) .......................................................................... 6, 7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO TRANSFER

*Zaltz v. JDATE*,
   952 F.Supp.2d 439 (E.D.N.Y. 2013) ........................................................................ 7

**Statutes**

28 U.S.C. §1332(d)(2)(A) .................................................................................................. 5

28 U.S.C. § 1391(b)(1) ...................................................................................................... 5

28 U.S.C. § 1391(c)(2) ....................................................................................................... 5

28 U.S.C. § 1391(d) ........................................................................................................... 5

28 U.S.C. § 1404(a) ................................................................................................... *passim*

46 U.S.C.S. § 30509 .......................................................................................................... 9

**Other**

Mark A. Lemley, *Terms of Use*, 91 Minn. L. Rev. 459 (2006) ........................................ 8

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This is a putative class action brought by Plaintiff Pamela Crawford ("Plaintiff") on behalf of a class of individuals who allegedly purchased products in Defendant Beachbody, LLC's ("Beachbody") Derm Exclusive® skincare line, including the Fill & Freeze product. As is set forth in detail below, Plaintiff alleges that in April 2013, she bought the Derm Exclusive® line. Plaintiff made this purchase online through Beachbody's website. (Decl. of Jonathan Gelfand ¶ 4.) As part of her online purchase, Plaintiff agreed to the Terms and Conditions of Use (the "Terms and Conditions") which included a forum selection clause requiring that any federal action be filed in the Central District of California. (Decl. of Jonathan Gelfand ¶¶ 6-8.) Despite this agreement, Plaintiff filed the instant action in the Southern District of California.

Beachbody now respectfully moves this Court to transfer the entire action to the United States District Court for the Central District of California pursuant to 28 U.S.C. Section1404(a) because there is a valid and enforceable forum selection clause that requires venue in the Central District of California.

## II. FACTS

Beachbody is headquartered in Santa Monica, California and is well known for its highly successful home fitness programs, including P90X® and Insanity®. (Compl. ¶¶ 5, 9; Decl. of Jonathan Gelfand ¶ 2.) Beachbody also sells the Derm Exclusive® line of skincare products. (Compl. ¶ 10; Decl. of Jonathan Gelfand ¶ 2.) The Derm Exclusive® products are manufactured in Carson, California in the County of Los Angeles. (Decl. of Jonathan Gelfand ¶ 2.) One of the products in the Derm Exclusive® product line is a wrinkle treatment called Fill & Freeze. (Compl. ¶ 10; Decl. of Jonathan Gelfand ¶ 2.) On April 21, 2013, Plaintiff ordered and paid for a Derm Exclusive® 4-Piece kit which contained the Fill & Freeze product. (Compl. ¶¶ 22, 23; Decl. of Jonathan Gelfand ¶ 4.)

1  Plaintiff's April 21, 2013 purchase was made online via Beachbody's website at http://www.beachbody.com.  (Decl. of Jonathan Gelfand ¶¶ 3-4, Ex. A.)  To complete her online purchase, Plaintiff was required to click an orange box containing the words "Place Order."  Immediately above the "Place Order" box, there was language that said:  "By clicking *Place Order* below, you are agreeing that you have read and understand the Beachbody Purchase Terms and Conditions, and Team Beachbody Terms and Conditions."  The words "Terms and Conditions" were in blue font (whereas the surrounding language was in grey font) and were hyperlinked to the actual Terms and Conditions.  The effect of this was that a purchaser who clicked the blue "Terms and Conditions" language was shown the Terms and Conditions in a new window that opened on their screen in front of any other windows that were already open.  A purchaser could then navigate through the written Terms and Conditions.  (Decl. of Jonathan Gelfand ¶¶ 6-8, Ex. B.)

The first paragraph of the Terms and Conditions provided in all capital letters: "BY USING THIS WEB SITE OR ANY WEB SITE OF BEACHBODY, LLC, AND TEAM BEACHBODY, AND/OR PLACING AN ORDER FOR BEACHBODY, LLC'S PRODUCTS OR SERVICES, YOU AGREE TO BE BOUND AND ABIDE BY BY [sic] THESE TERMS AND CONDITIONS AND ANY AMENDMENTS THERETO, . . . ."  The third paragraph of the Terms and Conditions cautioned in all capital letters:  "IF YOU DO NOT AGREE TO THE TERMS AND CONDITIONS, PLEASE DO NOT USE THE SITE OR ORDER OR USE BEACHBODY'S PRODUCTS OR SERVICES."  (Decl. of Jonathan Gelfand ¶ 8, Ex. C.)

The Terms and Conditions to which Plaintiff agreed when she completed her online purchase contained a forum selection clause which provided in pertinent part:

> **Applicable Law and Venue**
> These Terms and Conditions shall be governed by and construed in accordance with the laws of the State of California, without resort to its conflict of law provisions. You agree that any action at law or in equity arising out of or relating to the Terms and Conditions or your use of the Sites ***shall be filed only in the Superior Court of Los Angeles County, California, or the United States District Court for the Central District of California***, and except as stated herein you hereby irrevocably and unconditionally consent and submit to the exclusive jurisdiction of such courts over any suit, action, or proceeding arising out of the Terms and Conditions. (Emphasis added.)

(Decl. of Jonathan Gelfand ¶ 8, Ex. C.)

On July 1, 2014, Plaintiff filed the instant lawsuit in the Southern District of California alleging violations of California False Advertising law, the Consumer Legal Remedies Act, unfair competition law and breach of express and implied warranties relating to the Derm Exclusive® product line and specifically the Fill & Freeze product. (Complaint, *passim*.) Beachbody now seeks to enforce the Terms and Conditions and transfer this action to the Central District of California per the parties' agreement.

### III. LEGAL ARGUMENT

**1.   The Case Should Be Transferred to the Central District of California Under 28 U.S.C. §1404(a).**

28 U.S.C. Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought ***or to any district or division to which all parties have consented***." (Emphasis added.)  A motion to enforce a forum selection clause by transferring the case to another federal district should be brought under 1404(a).  *Atlantic Marine Constr. Co. v. United States District Court for the Western District of Texas*, -- U.S. --, 134 S. Ct. 568, 575 (Dec. 3, 2013). In *Atlantic Marine*, the U.S. Supreme Court held that: "When the parties

have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a §1404(a) motion be denied." *Id.* at 580.

Ordinarily, the analysis for transfer under Section 1404(a) is two-fold. First, the defendant must establish that the matter "might have been brought" in the district to which transfer is sought. 28 U.S.C. § 1404(a). This includes demonstrating that subject matter jurisdiction, personal jurisdiction, and venue would have been proper if the plaintiff had filed the action in the district to which transfer is sought. *Hoffman v. Blaski*, 363 U.S. 335, 343–44, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960). Second, the Court must balance three general factors: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interest of justice. These factors encompass various relevant considerations: convenience of the witnesses, judicial economy, relative ease of access to proof, and availability of compulsory process. *Malloy v. McDonald's Corp.*, 2009 WL 1288696, at *2 (E.D. Cal. May 6, 2009).

However, in *Atlantic Marine*, the Court went on to explain that: "The presence of a valid forum-selection clause requires district courts to adjust their usual §1404(a) analysis in three ways." *Id.* at 581. "First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* "Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests…. As a consequence, a district court may consider arguments about public-interest factors only." *Id.* at 582. The Court went on to state that the public-interest factors will "rarely defeat a transfer motion, [and] the practical result is that forum-selection clauses should control except in unusual cases." *Id.* "Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the

original venue's choice-of-law rules. . . ." *Id.*

It is clear that the case must be transferred to the Central District under Section 1404(a). As an initial matter, this action "might have been brought" in the Central District because the requirements for subject matter jurisdiction, personal jurisdiction, and proper venue are met. First, because the amount in controversy exceeds $5,000,000 exclusive of interest and costs, and at least one member of Plaintiff's class is a citizen of a different state from Beachbody, the Central District has subject matter jurisdiction under 28 U.S.C. §1332(d)(2)(A). (Compl. ¶ 6.) Second, the Central District could exercise personal jurisdiction over Beachbody because Beachbody's principal place of business is in Santa Monica, California. (Decl. Jonathan Gelfand ¶ 2.) *See Daimler AG v. Bauman*, -- U.S. --, 134 S. Ct. 746, 772 (2014) ("[A] State can exercise general jurisdiction where a corporate defendant has its corporate headquarters, and hence its principal place of business within the State.") *See also Hawkins v. Gerber Products Co.*, 924 F.Supp.2d 1208, 1213 (S.D. Cal. 2013) (noting that corporate defendant has sufficient "minimum contacts" with a district to subject it to the court's personal jurisdiction where its principal place of business is within the district). Third, venue is proper in "a judicial district in which any defendant resides, . . ." 28 U.S.C. § 1391(b)(1). As Beachbody's principal place of business is in Santa Monica, it "resides" in the Central District for venue purposes. *See id.* §§ 1391(c)(2), (d).[1]

Further, the factors set forth in the *Atlantic Marine* Court's analysis justify transferring this action to the Central District. *First*, Plaintiff's selection of the Southern District of California carries no weight whatsoever and she will be unable to

---

[1] "[A]n entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . . ." 28 U.S.C. § 1391(c)(2). Moreover, "in a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, . . ." *Id.* § 1391(d).

meet her burden of establishing that transfer to the Central District of California is unwarranted. The reasons why the forum selection clause is valid and enforceable and why transfer is warranted are set forth in detail below. *Second*, there are no public-interest factors (e.g. court congestion; interest in having the trial of a diversity case in a forum that is at home with the law) at issue here and certainly none so extraordinary as to defeat an agreed upon forum selection clause. *Third*, the choice of law issue is immaterial given that transfer is being sought between district courts in the same state. Under the Court's mandated analysis in *Atlantic Marine*, transfer of this action to the Central District of California is warranted and entirely proper under 28 U.S.C. Section1404(a).

**2. <u>The Forum Selection Clause Is Valid and Enforceable.</u>**

*(a) The Forum Selection Clause Is Part of a Valid Clickwrap Agreement.*

Internet agreements are construed as "clickwrap" or "browsewrap" agreements. "Clickwrap agreements require a user to affirmatively click a box on the website acknowledging awareness of and agreement to the terms of service before he or she is allowed to proceed with further utilization of the website." *United States v. Drew*, 259 F.R.D. 449, 462 n. 22 (C.D. Cal. 2009). Browsewrap agreements, by contrast, do not require users to expressly manifest consent to the terms and conditions. Where a browsewrap agreement exists, "the website will contain a notice that—by merely using the services of, obtaining information from, or initiating applications within the website—the user is agreeing to and is bound by the site's terms of service." *Id.*

Here, the forum selection clause is contained in a valid clickwrap agreement. Plaintiff was required to affirmatively agree that she read and understood the Terms and Conditions before she could place her order and she did just that. As the website imposed this obligation on Plaintiff as a condition for completing her order, the parties' agreement is a clickwrap agreement.

Agreements similar to the clickwrap agreement at issue in this action have been

routinely upheld where the user had notice of the existence of the terms and conditions.  *See Drew,* 259 F.R.D. at 462; *Doe v. Project Fair Bid Inc.,* 2011 WL 3516073, at *4 (W.D. Wash. 2011); *Swift v. Zynga Game Network, Inc.*, 805 F.Supp.2d 904, 911-12 (N.D. Cal. 2011) (enforcing arbitration clause where "Plaintiff was provided with an opportunity to review the terms of service in the form of a hyperlink immediately under the 'I accept' button" and clicked "Accept"); *Guadagno v. E*Trade Bank*, 592 F.Supp.2d 1263, 1271 (C.D. Cal. 2008) (explaining that a party may be bound by a "clickwrap" agreement if the terms are clear and acceptance is unambiguous, regardless of whether he actually reads them); *Ticketmaster L.L.C. v. RMG Technologies, Inc.*, 507 F.Supp.2d 1096, 1107 (C.D. Cal. 2007) (terms of use were valid where website specifically warned users that use of site was subject to terms of use and users had to affirmatively agree to terms of use to set up an account and purchase a ticket); *Inter-Mark USA, Inc. v. Intuit, Inc.*, 2008 WL 552482, at * 8 (N.D. Cal. Feb. 27, 2008) (in evaluating validity of clickwrap agreements, courts focus on whether the plaintiff had reasonable notice of and manifested assent to the clickwrap agreement); *Zaltz v. JDATE*, 952 F.Supp.2d 439, 451-52 (E.D.N.Y. 2013) (enforcing forum selection clause where prospective members were required to check a box confirming that they read and agreed to terms and conditions to obtain an account); *Fteja v. Facebook, Inc.*, 841 F.Supp.2d 829, 838-40 (S.D.N.Y.2012) (enforcing forum selection clause in website's terms of service where a notice below the "Sign Up" button stated "By clicking Sign Up, you are indicating that you have read and agree to the Terms of Service" and user had clicked the button).

Here, the parties' agreement which includes the forum selection clause is valid because Plaintiff clearly had notice of the Terms and Conditions and the opportunity to review the agreement.  The hyperlink for the Terms and Conditions was clearly displayed in blue text to set it apart from surrounding text.  When Plaintiff clicked the hyperlink, a separate window opened in front of all the windows open on her computer presenting her with unfettered access to the Terms and Conditions.

Moreover, the website provided: "By clicking *Place Order* below, you are agreeing that you have read and understand the Beachbody Purchase Terms and Conditions, and Team Beachbody Terms and Conditions." (Emphasis in original.) In other words, by clicking "*Place Order*" Plaintiff manifested her assent to the clickwrap agreement. When Plaintiff clicked the "*Place Order*" button she confirmed that she had read and understood the Terms and Conditions to which she was bound, including the forum selection clause it contained. There is nothing about this clickwrap agreement which would render it unenforceable.[2]

      (b)    *The Forum Selection Clause Is Reasonable and Should Be Enforced.*

Federal law governs the validity of a forum selection clause in diversity cases. *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988). The enforceability of the forum selection clause in the parties' agreement is governed by *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), wherein the Supreme Court held that forum selection clauses are presumptively valid. *Spradlin v. Lear Siegler Mgmt. Servs. Co.*, 926 F.2d 865, 868 (9th Cir. 1991). Because forum selection clauses are presumptively valid, they should be honored "absent some compelling and countervailing reason." *The Bremen*, 407 U.S. at 12. The party challenging the clause

---

[2] Even if Plaintiff argues that this is a browsewrap agreement (which it is not), it would still be enforceable because Beachbody provided Plaintiff adequate notice of the agreement. Indeed, "courts have held that a party's use of a website may be sufficient to give rise to an inference of assent to the Terms of Use contained therein (so called "browsewrap contracts")." *Molnar v. 1–800–Flowers.com, Inc.*, Case No.: 08–cv–0542–CAS–JCX, 2008 WL 4772125, at *7 (C.D. Cal. Sept. 29, 2008). *See Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 401–04 (2d Cir. 2004) (finding likelihood of success on the merits in a breach of browsewrap claim where the defendant was aware of the terms of the offer); *PDC Laboratories, Inc. v. Hach Co.*, 2009 WL 2605270, at *3 (C.D. Ill. Aug. 25, 2009) (though no affirmative assent was required, terms and conditions for online order were enforceable where they were hyperlinked on three separate pages of the online order process in underlined, contrasting text and were brought to the user's attention by reference in the final order step which read: "STEP 4 of 4: Review terms, add any comments, and submit order," and was followed by a hyperlink to the terms). *See also* Mark A. Lemley, *Terms of Use*, 91 Minn. L. Rev. 459, 477 (2006) ("Courts may be willing to overlook the utter absence of assent only when there are reasons to believe that the [website user] is aware of the [website owner's] terms.")

1  bears a "heavy burden of proof" and must "clearly show that enforcement would be
2  unreasonable and unjust, or that the clause was invalid for such reasons as fraud or
3  overreaching." *Id*. at 15, 17.  A forum selection clause may be disregarded only
4  where the plaintiff makes a "clear showing" that the clause is "unreasonable under the
5  circumstances."  *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996) (quoting
6  *The Bremen*, 407 U.S. at 10).

There are three factors that would make enforcement of a forum selection clause unreasonable: (1) if the inclusion of the clause in the agreement was the product of fraud or overreaching; (2) if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced; and (3) if enforcement would contravene a strong public policy of the forum in which suit is brought.  *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137-40 (9th Cir. 2004); *see also Bremen*, 407 U.S. at 12-13, 15, 18; *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir.1996); and *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991) (superseded by statute 46 U.S.C.S. § 30509 only in context of passenger tickets).  None of these factors are applicable here.  Plaintiff cannot make the requisite "clear showing" that the forum selection clause is in any way unenforceable or unreasonable and, in fact, there are five distinct reasons why the forum clause is enforceable and reasonable.

>                    *(i)     The Forum Selection Clause Clearly Applies to*
>                           *Plaintiff's Claims.*

Plaintiff's lawsuit arises out of her online purchase of and subsequent use of the Derm Exclusive® products, including the Fill & Freeze product.  The Terms and Conditions specifically relate to and govern Plaintiff's purchases made through Beachbody's website, as they state: "BY USING THIS WEBSITE OR ANY WEB SITE OR ANY WEB SITE OF BEACHBODY, LLC'S, PRODUCTS OR SERVICES, YOU AGREE TO BE BOUND AND ABIDE BY BY [sic] THESE TERMS AND CONDITIONS AND ANY AMENDMENTS THERETO . . ." (Decl.

1  Jonathan Gelfand ¶ 8, Ex. C.)  The Terms and Conditions further provide that "any
2  action" "arising out of or relating to the Terms and Conditions or your use of the Sites
3  shall be filed only in the Superior Court of Los Angeles County, California, or the
4  United States District Court for the Central District of California."
5    Here, Plaintiff's claims clearly arise out of and relate to the Terms and
6  Conditions which specifically covers orders for Beachbody's products, i.e., the Derm
7  Exclusive® products.  Similarly, the forum selection clause applies to any action that
8  arises out of or relates to the Terms and Conditions, i.e., a lawsuit stemming from the
9  purchase and use of Beachbody's products.

10           *(ii)   The Forum Selection Clause Is Not the Result of Fraud*
11                         *or Overreaching.*

12    In obtaining Plaintiff's consent to these Terms and Conditions there was no
13  fraud or overreaching by Beachbody.  To establish that Beachbody committed fraud,
14  Plaintiff would need to establish the following: (1) Beachbody made a
15  misrepresentation to her; (2) Beachbody had knowledge that the representation was
16  false; (3) Beachbody intended to defraud her, i.e., to induce reliance; (4) she
17  justifiably relied on the misrepresentation; and (5) the resulting damage.  *See*
18  *Celebrity Chefs Tour, LLC v. Macy's, Inc.*, 2014 WL 1660427, at *7 (S.D. Cal. Aug.
19  25, 2014).  Plaintiff cannot possibly make any such showing.
20    Beachbody provided Plaintiff with reasonable notice of the Terms and
21  Conditions.  The hyperlink to the Terms and Conditions was clearly displayed in blue
22  to set it apart from other text and the website provided: "By clicking *Place Order*
23  below, you are agreeing that you have read and understand the Beachbody Purchase
24  Terms and Conditions, and Team Beachbody Terms and Conditions."  The hyperlink
25  was also conspicuous to Plaintiff prior to her completion of her online order.  Plaintiff
26  had the opportunity to click the hyperlink and review the full text of the Terms and
27  Conditions before completing her purchase.  The first paragraph of the text of the
28  Terms and Conditions advised Plaintiff in all capital letters that "BY USING THIS

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO TRANSFER

1 WEB SITE OR ANY WEB SITE OF BEACHBODY, LLC, AND TEAM
2 BEACHBODY, AND/OR PLACING AN ORDER FOR BEACHBODY, LLC'S
3 PRODUCTS OR SERVICES, YOU AGREE TO BE BOUND AND ABIDE BY BY
4 [sic] THESE TERMS AND CONDITIONS AND ANY AMENDMENTS THERETO,
5 . . ." The third paragraph of the text of the Terms and Conditions cautioned in all
6 capital letters: "IF YOU DO NOT AGREE TO THE TERMS AND CONDITIONS,
7 PLEASE DO NOT USE THE SITE OR ORDER OR USE BEACHBODY'S
8 PRODUCTS OR SERVICES."

Further, Plaintiff was put on notice that by clicking the "Place Order" button she was confirming that she had read and understood the Terms and Conditions, including the forum selection clause it contained. As such, Beachbody made no false representations inducing Plaintiff to assent to the Terms and Conditions. To the contrary, Beachbody explicitly warned Plaintiff about the ramifications of her assenting to them.

Plaintiff may argue that Beachbody was in a superior bargaining position and that Plaintiff had no opportunity to negotiate the terms in the "Applicable Law and Venue Section," but as the Court affirmed in *Bennett v. Hosting.com, Inc.*, "neither a power differential between the parties nor the non-negotiability of the contract is sufficient to set aside the forum selection clause." 2008 WL 4951020, at *2 (N.D. Cal. Nov. 18, 2008) (citing *Murphy*, 362 F.3d at 1141); *See also Carnival Cruise Lines, Inc.*, 499 U.S. at 593 ("a nonnegotiated forum-selection clause in a form ticket contract [is not unenforceable] simply because it is not the subject of bargaining.").

The Ninth Circuit's decision in *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, illustrates the application of these principles. In *Murphy*, the Ninth Circuit did not hesitate to find that there was no fraud or overreaching that would prohibit enforcement of a forum selection clause in a dispute between a truck driver and a trucking company. Although the driver in that case had only a tenth grade education and claimed to have been told that the contract was take-it-or-leave-it and the terms

were non-negotiable, the Court found no evidence of fraud or overreaching by the trucking company. *Id.* at 1141. The Court noted that nothing prevented the driver from working for another company if the forum selection clause presented a problem. *Id.* The same is true here. Nothing prevented Plaintiff from not purchasing the products or from purchasing another company's products if the Terms and Conditions presented a problem for her.

Accordingly, there is nothing about the forum selection clause which could be considered fraudulent and overreaching or that would render it unenforceable.

> *(iii) The Forum Selection Clause Does Not Deny Plaintiff an Effective Forum.*

Courts may decline to enforce forum selection clauses that are the product of a full and fair bargaining process and which do not contravene any public policy where the party opposing transfer proves that "'trial in the contractual forum would be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.'" *See Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d at 515 (quoting *Bremen*, 407 U.S. at 18).

Here, the contractual forum, the Central District, is within the State of California. While Plaintiff may find litigating in the Central District somewhat less convenient for her than litigating in the Southern District, this inconvenience was foreseeable to Plaintiff when she agreed to the Terms and Conditions. (Decl. Jonathan Gelfand ¶ 8, Ex. C.) Moreover, the inconvenience attributable to litigating outside a party's home forum does not qualify as a "grave" or "serious" inconvenience that effectively "deprive[s] [a] party of his day in court." *The Bremen*, 407 U.S. at 17-18. In *Spradlin v. Lear Siegler Management Services Co., Inc.*, 926 F.2d 865, the Ninth Circuit enforced a forum selection clause in an employment contract requiring the plaintiff, a California resident, to litigate his employment dispute in Saudi Arabia under Saudi Arabian law. The financial hardship which the *Spradlin* Court found inadequate to defeat the forum selection clause is far more severe than the potential

1  hardship on Plaintiff here.

2        Here, Beachbody is not asking Plaintiff, a California resident, to litigate in
3  another country or even another state; rather, Beachbody merely seeks to enforce the
4  terms of the parties' agreement and to litigate this matter in the Central District of
5  California, the immediately neighboring federal district.  Furthermore, there can be no
6  doubt that a Court in the Central District will afford Plaintiff all of the fairness and
7  impartiality that she would receive in the Southern District and will be equally capable
8  of adjudicating Plaintiff's claims.  *See Foster v. Nationwide Mut. Ins. Co.*, No. 07-
9  4928, 2007 WL 4410408, at *6 (N.D. Cal. Dec. 14, 2007) ("other federal courts are
10 fully capable of applying California law"), *cited in Bennett*, 2008 WL 4951020, at * 3.

11                 *(iv)    Plaintiff Will Not Be Legally Disadvantaged by a*
12                       *Transfer.*

13       Because there will be no material change in the law that is applied to Plaintiff's
14 case whether in the Southern District or the Central District, Plaintiff will not be
15 legally disadvantaged in any way by a change of venue to the Central District.
16 Moreover, it is worth noting that the parties have substantial ties to the Central District
17 given that this is where Beachbody maintains its corporate headquarters and this is
18 where the products were manufactured.

19                 *(v)    Enforcing the Forum Selection Clause Does Not Violate*
20                      *Public Policy.*

21       Enforcing the forum selection clause in the Terms and Conditions does not
22 violate the public policy of California.  To the contrary, in California "'strong public
23 policy supports the enforcement of forum selection clauses.'"  *Bennett*, 2008 WL
24 4951020, at *2 (quoting *E. & J. Gallo Winery v. Andina Licores S.A.*, 440 F.Supp.2d
25 1115, 1126 (E.D. Cal. 2006)); *see also Meras Engineering, Inc. v. CH2O, Inc.*, 2013
26 WL 146341, at *11 (N.D. Cal. Jan. 14, 2013) ("California law, like federal law,
27 generally favors the enforcement of forum selection clauses.")  This is because
28 "enforcement of a freely negotiated forum selection clause comports with long-

established notions of freedom of contract and allows parties in routine commercial transactions to eliminate the uncertainties of where litigation will take place." *Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 280 (9th Cir. 1984). To be clear, had Plaintiff not agreed to the Terms and Conditions, she, like the plaintiff in *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, had the option of not going forward with the transaction. As such, public policy considerations weigh in favor of enforcing the parties' forum selection clause.

## IV. CONCLUSION

In purchasing Beachbody's products online, Plaintiff agreed to the Terms and Conditions, including the forum selection clause. Plaintiff agreed that any lawsuit she filed against Beachbody arising out of or relating to the Terms and Conditions or her use of the "Sites" would be filed in the Superior Court of Los Angeles or in the Central District of California. In filing her lawsuit in the Southern District of California, Plaintiff disregarded the express terms of the agreement which governed her purchase and use of the Derm Exclusive® products. As such, Beachbody respectfully requests that this Court, pursuant to 28 U.S.C. Section 1404(a), transfer this action to the Central District of California, the venue agreed upon by the parties in the Terms and Conditions.

Dated: September 15, 2014                COZEN O'CONNOR

By: /s/ Matthew S. Steinberg
    Matthew S. Steinberg
    Amy B. Alderfer
    Sara B. Poster
    Attorneys for Defendant
    Beachbody, LLC

LEGAL\20637401\3 00650.2504.000/352949.000