Matthew S. Steinberg (SBN 82969)
msteinberg@cozen.com
Amy B. Alderfer (SBN 205482)
aalderfer@cozen.com
Sara B. Poster (SBN 244838)
sposter@cozen.com
COZEN O'CONNOR
601 South Figueroa Street
Suite 3700
Los Angeles, CA  90017
Telephone: 213.892.7900
Facsimile: 213.892.7999

Attorneys for Defendant Beachbody, LLC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA CRAWFORD, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BEACHBODY, LLC,<br><br>Defendant. | Case No.: 14CV1583 GPC KSC<br><br>[Assigned for all purposes to Honorable Gonzalo P. Curiel, Courtroom 2D, (2nd Floor- Schwartz)]<br><br>**DEFENDANT BEACHBODY, LLC'S REPLY IN SUPPORT OF ITS MOTION TO TRANSFER THIS ACTION TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**<br><br>[28 U.S.C. §1404(a)]<br><br>Date:  November 7, 2014<br>Time:  1:30 p.m.<br>Courtroom:  2D |

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................................... 1
II. LEGAL ARGUMENT ............................................................................................... 1
    A. Plaintiff Is Contractually Bound to the Terms and Conditions. ......................... 1
        1. *Plaintiff Had Notice of the Terms and Conditions and Assented to Them by Clicking "Place Order."* .................................................................. 1
        2. *The Terms and Conditions Are Not Illusory.* ............................................. 4
        3. *The Terms and Conditions Cover the Allegations in Plaintiff's Complaint.* ................................................................................................. 5
        4. *The Terms and Conditions Apply to All Orders* ........................................ 6
    B. Plaintiff's Unconscionability Argument Fails................................................... 6
III. CONCLUSION ....................................................................................................... 10

## **TABLE OF AUTHORITIES**

Page

**Federal Cases**

*Al-Thani v. Wells Fargo & Co.*,
   No. C 08–1745 CW, 2009 WL 55442 (N.D. Cal. Jan. 7, 2009) ..............................10

*Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for the Western District of Texas*,
   134 S.Ct. 568 (2013) ............................................................................................9

*Bradberry v. T-Mobile USA, Inc.*,
   2007 WL 1241936 (N.D. Cal. Apr. 27, 2007) .........................................................8

*Bragg v. Linden Research, Inc.*,
   487 F.Supp.2d 593 (E.D. Pa. 2007) .......................................................................8

*Captain Bounce, Inc. v. Business Fin. Servs., Inc.*,
   No. 11–CV–858 JLS (WMC), 2012 WL 928412 (S.D. Cal. Mar. 19, 2012) ..........10

*Fteja v. Facebook, Inc.*,
   841 F. Supp. 2d 829 (S.D. N.Y. 2012) ................................................................2, 3

*Gray v. Conseco, Inc.*,
   No. SA CV 00-322DOC(EEX), 2000 WL 1480273 (C.D. Cal. Sept. 29, 2000).......9

*Gray v. Conseco, Inc.*,
   No. SACV000322DOCEEX, 2001 WL 1081347 (C.D. Cal. Sep. 6, 2001)..............9

*Int'l Ambassador Programs, Inc. v. Archexpo*,
   68 F.3d 337 (9th Cir. 1995) ....................................................................................6

*Kilgore v. KeyBank, Nat. Ass'n*,
   718 F.3d 1052 (9th Cir. 2013) ................................................................................7

*Mazur v. eBay Inc.*,
   2008 WL 618988 (N.D. Cal. Mar. 4, 2008) .........................................................7, 8

*Nagrampa v. MailCoups, Inc.*,
   469 F.3d 1257 (9th Cir. 2006) ................................................................................9

*Nguyen v. Barnes & Noble*,
   763 F.3d 1171 (9th Cir. 2014) ............................................................................1, 2

*Shroyer v. New Cingular Wireless Services, Inc.*,
   498 F.3d 976 (9th Cir. 2007) ..................................................................................9

*Specht v. Netscape Commc'ns Corp.*,
   306 F.3d 17 (2d Cir. 2002) .....................................................................................4

*Spradlin v. Lear Siegler Mgmt. Servs. Co., Inc.*,
   926 F.2d 865 (9th Cir. 1991) ................................................................................10

*Ulbrich v. Overstock.Com, Inc.*,
   887 F.Supp.2d 924 (N.D. Cal. 2012) ................................................................9, 10

**State Cases**

*Armendariz v. Foundation Health Psychcare Services, Inc.*,
  24 Cal.4th 83 (2000)................................................................................................6

*Aron v. U–Haul Co. of Cal.*,
  143 Cal.App.4th 796 (2006)......................................................................................9

*Bruni v. Didion*,
  160 Cal.App.4th 1272 (2008)....................................................................................9

*Dean Witter Reynolds, Inc. v. Sup. Ct.*,
  211 Cal.App.3d 758 (1989).......................................................................................8

*Greenbriar Homes Communities, Inc. v. Sup. Ct.*,
  117 Cal.App.4th 337 (2004)......................................................................................7

*Parada v. Sup. Ct.*,
  176 Cal.App.4th 1554 (2009)....................................................................................7

*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC*,
  55 Cal.4th 223 (2012)................................................................................................7

*Tarrant Bell Property, LLC v. Sup. Ct.*,
  51 Cal.4th 538 (2011)................................................................................................7

*Walnut Producers of California v. Diamond Foods, Inc.*,
  187 Cal.App.4th 634 (2010)......................................................................................7

*Wayne v. Staples, Inc.*,
  135 Cal.App.4th 466 (2006)......................................................................................8

*Woodside Homes of Cal., Inc. v. Sup. Ct.*,
  107 Cal.App.4th 723 (2003)......................................................................................8

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff's Opposition is a futile attempt to avoid the Terms and Conditions to which she agreed. Rife with case law that does not come close to supporting her positions, Plaintiff tries every conceivable angle to avoid being bound by the Terms and Conditions that she assented to when she took the affirmative step of clicking the Place Order button. Plaintiff argues that there was no mutual assent, but the facts and supporting case law demonstrate that this simply is not the case when a user affirmatively manifests consent as Plaintiff did. Plaintiff's argument that the Terms and Conditions are illusory fails because Beachbody does have obligations under the Terms and Conditions and because Beachbody does not have the ability to alter the Terms and Conditions and make them apply retroactively. It also is clear that the Terms and Conditions do apply to this dispute which stems from Plaintiff's purchase of the Derm Exclusive products—something specifically contemplated in the Terms and Conditions. Finally, the fact that Plaintiff made one phone order is immaterial and does nothing to change what Plaintiff agreed to when she placed her online order. Plaintiff's back-up argument, that the contract is unconscionable, fares no better. Plaintiff has not and cannot demonstrate the requisite surprise and oppression necessary to demonstrate procedural unconscionably and she fails to show how the venue provision is substantively unconscionable. All of Plaintiff's arguments fail for the detailed reasons set forth below.

## II. LEGAL ARGUMENT

**A.  Plaintiff is Contractually Bound to the Terms and Conditions.**

*1.  Plaintiff Had Notice of the Terms and Conditions and Assented to Them by Clicking "Place Order."*

Plaintiff 's heavy reliance on *Nguyen v. Barnes & Noble*, 763 F.3d 1171 (9th Cir. 2014) is a futile attempt to fit a square peg into a round hole as *Nguyen* is readily distinguishable from this case. *Nguyen* involved a browsewrap agreement whereby a

1  hyperlink to Barnes & Nobles' Terms of Use was placed on each page of the website
2  but otherwise provided no notice to the user and no prompts to take affirmative action
3  to demonstrate assent to the Terms of Use.  Barnes & Noble argued that simply by
4  using the website plaintiff Nguyen was bound to the Terms of Use.  *Id*. at 1174-1175.
5  The Ninth Circuit held that "where a website makes its terms of use available via a
6  conspicuous hyperlink on every page of the website ***but otherwise provides no notice***
7  ***to users nor prompts them to take any affirmative action to demonstrate assent, even***
8  ***close proximity of the hyperlink to relevant buttons users must click on—without***
9  ***more—is insufficient to give rise to constructive notice.***  *Id.* at 1179 (emphasis
10 added).  This is not the case here.
11       *Nguyen* is factually inapposite for the main reason that in the instant case the
12 hyperlink to the Terms and Conditions was conspicuously placed directly above the
13 "Place Order" button ***and*** there was language which provided notice to the consumer
14 that by taking the affirmative step of clicking the "Place Order" button, the consumer
15 was affirming that he or she had read and agreed to the Terms and Conditions.
16       Also notably absent from Plaintiff's opposition is any citation to *Fteja v.*
17 *Facebook, Inc.*, 841 F. Supp. 2d 829 (S.D. N.Y. 2012).  No doubt this is because *Fteja*
18 is squarely on all fours with the instant case.  In *Fteja*, the plaintiff sued Facebook
19 alleging that Facebook disabled his account without justification and for the
20 discriminatory reason that he was Muslim.  Facebook filed a motion to transfer the
21 case from New York to California pursuant to a forum selection clause contained in its
22 Terms of Service.  *Id*. at 834.  Plaintiff argued that he did not remember agreeing to
23 any Terms of Service or agreeing to any other Facebook agreement.  *Id*. at 834.
24 Facebook argued that by clicking "Sign Up" Fjeta indicated that he had read the
25 Terms of Service and was thus bound by them.
26       The Court noted that immediately below the sign up button was a sentence that
27 read:  "'By clicking Sign Up, you are indicating that you have read and agree to the
28 Terms of Service.'"  *Id*. at 834.  The Court also noted that the appearance of the

1  phrase 'Terms of Service' indicated that there was a hyperlink. *Id*. at 835.  The Court
2  went on to explain that in order to have signed up for and obtained a Facebook
3  account, plaintiff must have clicked the Sign Up button. *Id.*  In terms of whether the
4  Facebook agreement was a clickwrap or a browsewrap, the Court found it to be
5  somewhat of a mixture of both stating:  "Facebook's Terms of Use are somewhat like
6  a browsewrap agreement in that the terms are only visible via a hyperlink, but also
7  somewhat like a clickwrap agreement in that the user must do something else—click
8  "Sign Up"—to assent to the hyperlinked terms. Yet, unlike some clickwrap
9  agreements, the user can click to assent whether or not the user has been presented
10 with the terms." *Id*. at 838.

11      In determining what end result to reach, the Court asked the following
12 questions:  "Have terms been reasonably communicated where a consumer must take
13 further action not only, as in a clickwrap agreement, to assent to the terms but also, as
14 in a browsewrap agreement, to view them?  Is it enough that Facebook warns its users
15 that they will accept terms if they click a button while providing the opportunity to
16 view the terms by first clicking on a hyperlink?"  *Id*. at 838.  **The Court answered**
17 *yes* **to both questions and enforced the Terms of Service.**  The same result is
18 warranted here.

19      Here, the Terms and Conditions were reasonably communicated to Plaintiff in
20 that they were placed, via hyperlink in a different font color, immediately above the
21 Place Order button.  In clicking "Place Order," Plaintiff assented to Beachbody's
22 Terms and Conditions, just like plaintiff Fjeta assented when he clicked "Sign Up."
23 Further, it is clear that just as plaintiff Fteja could not create and obtain a Facebook
24 account without assenting, Plaintiff Crawford could not have placed an online order
25 for the Derm Exclusive products without assenting to Beachbody's Terms and
26 Conditions.  The fact that Plaintiff admittedly successfully ordered product through
27 Beachbody's website is evidence of her assent to the Terms and Conditions.
28      Plaintiff's argument that she lacked notice of the Terms and Conditions is based

on her misplaced reliance on *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17 (2d Cir. 2002). In *Specht* the terms were only visible on a *separate screen* below the "Yes" icon. *Id.* at 31-35. The *Specht* Court held that a reasonably prudent offeree would not have scrolled down and noticed the terms before clicking. This is not the case here. Here, the hyperlink to the Terms and Conditions was placed directly *above* the Place Order button and offset in a different color such that they could not be missed.

### *2.     The Terms and Conditions Are Not Illusory*.

Plaintiff first argues that Beachbody has "not really promised to do anything" and therefore consideration is lacking and the Terms and Conditions are illusory. Plaintiff is wrong. Pursuant to the Terms and Conditions, Beachbody (among other things) agrees to provide product, offers a guarantee, agrees to provide product under the automatic renewal process, and provides certain warranties. Moreover, Beachbody also is bound by the applicable terms that bind Plaintiff, such as the venue provision. The Terms and Conditions are not such that Beachbody has no responsibilities under them.

Plaintiff then argues that the Terms and Conditions are illusory because Beachbody can amend them, but Plaintiff fails to acknowledge that Beachbody cannot amend those terms retroactively. The applicable Terms and Conditions provide as follows: "We may update or amend these Terms and Conditions from time to time to comply with law or to meet our changing business requirements without notice to you. Any updates or amendments will be posted on the Sites. The Terms and Conditions displayed on the Sites at the time the order is accepted will apply to the order."

Consumers are told that the Terms and Conditions may be modified and are told that any updates or amendments will be on the Sites where any consumer can easily review them. Thus, Plaintiff, and any other consumer who wanted to review the operative Terms and Conditions, merely had to visit the website. Additionally, and importantly, the Terms and Conditions that apply to a particular order are those that

are displayed on the Site *at the time the order is accepted*. In other words, the revisions do not retroactively apply to previously placed orders and there is no surprise or gotcha that might befall a consumer. Thus, the Terms and Conditions that apply to Plaintiff's April 2013 order are those that were in place at the time that order was placed. If a consumer wants to see what Terms and Conditions will apply to an upcoming order, he or she can simply review the Terms and Conditions at the time the order is to renew.

Finally, it must be noted that all of the cases cited by Plaintiff address arbitration clauses, not choice of venue provisions, as being found to be illusory and unenforceable when they can be changed unilaterally. Plaintiff fails to cite a single case holding that the entire agreement or, more specifically, a venue provision is illusory in the context provided in this case.

### 3. *The Terms and Conditions Cover the Allegations in Plaintiff's Complaint*.

Beachbody offered the declaration of Jonathan Gelfand attaching the Terms and Conditions that were in effect on April 21, 2013, when Plaintiff made her first online purchase. Plaintiff has offered no evidence to the contrary and filed no objections to Mr. Gelfand's declaration. The express language of the Terms and Conditions make it clear that the Terms and Conditions apply to the action of placing orders. Specifically, the applicable Terms and Conditions state:

> "BY USING THIS WEB SITE OR ANY WEB SITE OF BEACHBODY, LLC, AND TEAM BEACHBODY, **AND/OR PLACING AN ORDER FOR BEACHBODY, LLC'S, PRODUCTS OR SERVICES, YOU AGREE TO BE BOUND AND ABIDE BY BY [sic] THESE TERMS AND CONDITIONS AND ANY AMENDMENTS THERETO** . . ."

(Gelfand Declaration, Ex. C; emphasis added.) The Terms and Conditions go on to provide: "The Terms and Conditions constitute the entire agreement between Beachbody and you with respect to your use of the Sites, your purchase of products

and services through the Sites, and as applicable any products or services of Beachbody."

It is clear that Plaintiff's claims of false advertising, which allegedly led her to purchase the Derm Exclusive products, stem directly from her purchase of product through the website. Had Plaintiff not made her April 21, 2013, purchase she would have no claim. Plaintiff clearly is bound by the applicable Terms and Conditions which include the provision providing that venue is proper in the Los Angeles Superior Court or the Central District of California.

### 4. *The Terms and Conditions Apply to All Orders.*

Plaintiff admits she placed her initial order on-line and that it subsequently renewed. (Crawford Decl. paras. 3-5.) Plaintiff also claims that sometime later she made one additional purchase by phone for a stand-alone Fill & Freeze. (Crawford at para. 5.) Plaintiff cites *Int'l Ambassador Programs, Inc. v. Archexpo*, 68 F.3d 337, 340 (9th Cir. 1995), however, this case is wholly inapposite. *Int'l Ambassador Programs, Inc. v. Archexpo*, involved two separate vacation tour agreements, one from April and one from July. The April agreement contained an arbitration clause and the July one did not. In refusing to extend the arbitration clause to the July agreement, the Court noted that the April and July agreements were distinct and involved two separate types of tours and two different groups of tourists. *Id.* at 340. *Int'l Ambassador Programs, Inc.* is not even factually close to the instant situation, and Plaintiff gets no traction from it as she cannot demonstrate how a single phone purchase would negate her agreement to the Terms and Conditions.

**B.   Plaintiff's Unconscionability Argument Fails**.

Plaintiff's contention that the venue provision cannot be enforced because it is unconscionable is also meritless. As an initial matter, a contract provision is unconscionable, and therefore unenforceable, only if it is **both** procedurally and substantively unconscionable. *See Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83, 114 (2000). Plaintiff cannot make this showing.

With respect to procedural unconscionability, a finding of adhesion is not conclusive. The analysis must also consider whether surprise and oppression are present. *Parada v. Sup. Ct.*, 176 Cal.App.4th 1554, 1571 (2009); *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC*, 55 Cal.4th 223, 246 (2012). As for surprise, Plaintiff cannot possibly establish she was surprised by the venue provision. The venue provision appears in a section of the Terms and Conditions under a heading stating "Applicable Law and Venue" in bolded text. Plaintiff would have easily seen this section when she scrolled through the Terms and Conditions, as they contained clear section and heading breaks for each section. In the venue provision itself, the language explaining that the Central District of California is the proper venue is towards the beginning, and is specifically located in the second sentence. The venue provision was easily ascertainable in the Terms and Conditions. As the provision was not hidden but rather was clear and conspicuous, it could not have been a surprise. *See Pinnacle*, 55 Cal.4th at 247, n. 12 (no surprise where arbitration provisions have headings in bold describing their substance); *Walnut Producers of California v. Diamond Foods, Inc.*, 187 Cal.App.4th 634, 647 (2010) (no surprise where arbitration clause in same size type as remainder under a heading "'Dispute Resolution' "); *Greenbriar Homes Communities, Inc. v. Sup. Ct.*, 117 Cal.App.4th 337, 345 (2004), disapproved on other grounds in *Tarrant Bell Property, LLC v. Sup. Ct.*, 51 Cal.4th 538, 545, n. 5 (2011) (no procedural unconscionability when provision written in same sized font as the remainder and easily understood); *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1059 (9th Cir. 2013) ("Nor was the arbitration clause buried in fine print ... but was instead in its own section, clearly labeled, in boldface.")

The cases Plaintiff cites in support of her procedural unconscionability argument are not on point. In *Mazur v. eBay Inc.*, the contract was found to be procedurally unconscionable because the Terms and Conditions were presented to the plaintiff in a format that only permitted a few single spaced lines of block text to be

read at a time; the text included no paragraph, section, or heading breaks, making the Terms and Conditions difficult to read and navigate through; the text appeared exactly the same when printed out; and the section headings were embedded in the text and were difficult to understand. 2008 WL 618988, at *5 (N.D. Cal. Mar. 4, 2008). In *Bradberry v. T-Mobile USA, Inc.*, the class action waiver in question was included in Terms and Conditions that was "a prolix printed form consisting of four pages of small font type." 2007 WL 1241936, at *5-6 (N.D. Cal. Apr. 27, 2007). In *Bragg v. Linden Research, Inc.*, the defendant had "buried the . . . arbitration provision in a lengthy paragraph under the benign heading 'GENERAL PROVISIONS.'" 487 F.Supp.2d 593, 607 (E.D. Pa. 2007). In contrast to the facts at issue in those cases, here, the Terms and Conditions brought the readers' attention to the venue provision in a way that was easy to understand. Those cases are therefore inapplicable.

Further, Plaintiff has not established that there was any oppression associated with the venue provision. "There can be no oppression establishing procedural unconscionability, even assuming unequal bargaining power and an adhesion contract, when the customer has meaningful choices." *Wayne v. Staples, Inc.*, 135 Cal.App.4th 466, 482 (2006). Plaintiff has made no showing that she lacked a meaningful choice in purchasing anti-aging skin products from any of the countless other sources, or was required to purchase any such products at all. Thus, no oppression was present here. *See Dean Witter Reynolds, Inc. v. Sup. Ct.*, 211 Cal.App.3d 758, 768, 772 (1989) (finding that a "claim of oppression may be defeated if the complaining party had reasonably available alternative sources of supply from which to obtain the desired goods ... free of the terms claimed to be unconscionable" and the plaintiff "was not shown to lack a meaningful choice"); *Woodside Homes of Cal., Inc. v. Sup. Ct.*, 107 Cal.App.4th 723, 730 (2003) (absence of evidence of de facto coercion or lack of choices by buyers supported conclusion there was at most minimal procedural unconscionability).

Plaintiff's substantive unconscionability argument fails as well. "'The

substantive element of unconscionability focuses on the actual terms of the agreement and evaluates whether they create 'overly harsh' or 'one-sided' results as to 'shock the conscience.'" *Bruni v. Didion*, 160 Cal.App.4th 1272, 1288-89 (2008) (quoting *Aron v. U–Haul Co. of Cal.*, 143 Cal.App.4th 796, 808 (2006)). In arguing that substantive unconscionability exists, Plaintiff improperly focuses on Terms and Conditions as a whole. Since Beachbody's Motion to Transfer Venue is solely concerned with whether the venue provision should be enforced, just that provision is at issue here. *See Ulbrich v. Overstock.Com, Inc.*, 887 F.Supp.2d 924, 934 (N.D. Cal. 2012) (disregarding provision raised by plaintiff to argue substantive unconscionability in part because it was not at issue); *Shroyer v. New Cingular Wireless Services, Inc.*, 498 F.3d 976, 981 (9th Cir. 2007) ("Under California law, a contract *provision* is unenforceable due to unconscionability only if it is both procedurally and substantively unconscionable.") (emphasis added); *Gray v. Conseco, Inc.*, No. SA CV 00-322DOC(EEX), 2000 WL 1480273, at *3 (C.D. Cal. Sept. 29, 2000), clarification denied by *Gray v. Conseco, Inc.*, No. SACV000322DOCEEX, 2001 WL 1081347 (C.D. Cal. Sep. 6, 2001) (on a motion to compel arbitration, the trial court does not determine whether the contract as a whole is unconscionable; rather, the court is limited to determining whether the arbitration clause itself is unconscionable).

With regard to the venue provision, Plaintiff has cited no authority establishing that the venue provision at issue is unconscionable and cannot make any such showing. Beachbody's venue provision is a standard venue clause selecting a venue that is just a several hour drive (or a less than one hour flight) from Plaintiff's residence. Indeed, the Supreme Court has held that forum selection clauses are to be enforced in "all but the most unusual cases," and the Ninth Circuit has held that a forum selection clause may be found unconscionable only if its "place and manner" restrictions are "unduly oppressive," or "have the effect of shielding the stronger party from liability." *See Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for the Western District of Texas*, 134 S.Ct. 568, 583 (2013); *Nagrampa v. MailCoups, Inc.*,

469 F.3d 1257, 1287 (9th Cir. 2006).  As such, the venue provision at issue is not the kind of overly harsh or shocking provision that could be considered unconscionable.  *See Spradlin v. Lear Siegler Mgmt. Servs. Co., Inc.*, 926 F.2d 865, 869 (9th Cir. 1991) (while court found troubling a forum selection clause requiring employee who returned to America after his termination in Saudi Arabia to arbitrate employment dispute in Saudi Arabia, employee had not offered more than "scant and conclusory" evidence of hardship); *see also Captain Bounce, Inc. v. Business Fin. Servs., Inc.*, No. 11–CV–858 JLS (WMC), 2012 WL 928412, at *9–10 (S.D. Cal. Mar. 19, 2012) (no significant hardship shown with respect to North Carolina forum selection provision where plaintiffs did not make a showing that the provision was unduly oppressive or had the effect of shielding the stronger party from liability).

As to the other provisions Plaintiff cites in support of her assertion, these provisions are irrelevant to the analysis of the instant Motion.  Notwithstanding this, Plaintiff has failed to indicate how or why these provisions are so overly harsh or one sided so as to "shock the conscience."  All she has done is set forth a conclusory statement that they are unconscionable without any explanation of why this is allegedly so.  *See Al-Thani v. Wells Fargo & Co.*, No. C 08–1745 CW, 2009 WL 55442, at *8 (N.D. Cal. Jan. 7, 2009) (plaintiff's conclusory assertions of substantive unconscionability were inadequate); *Ulbrich*, 887 F.Supp.2d 924 at 933-34 (conclusory statements insufficient to show hardship for purposes of substantive unconscionability).[1]

### III. CONCLUSION

For the foregoing reasons and as set forth in Beachbody's moving papers, this matter should be transferred to the Central District of California.

---

[1] With respect to Plaintiff's final argument that the "convenience" factors do not favor a transfer, this again completely disregards the fact that Plaintiff affirmatively agreed to specific terms which clearly set forth exactly where any dispute, including the one brought by Plaintiff before the Court today, would be heard. This is precisely why Beachbody's Motion is based entirely on the venue provision and a traditional analysis of the convenience factors is not necessary or appropriate under these circumstances.

Dated: October 24, 2014            COZEN O'CONNOR

By: */s/ Matthew S. Steinberg*
    Matthew S. Steinberg
    Amy B. Alderfer
    Sara B. Poster
    Attorneys for Defendant
    Beachbody, LLC

LEGAL\21130248\4 00650.2504.000/352949.000